### No. 2548.

### WILLIAM S. PIKE v. MERCHNTS' MUTUAL INSURANCE COMPANY.

Hawes & Bowen, of the city of New Orleans, transferred to W. S. Pike, as assignee of their creditors, the steamer "Wm. Tabor," of which they were sole owners. Pike effected an insurance on said steamer in the office of the defendant. A short time after, the master and mariners of the vessel committed barratry by causing her to be fraudulently stranded on the rocks near Key West. The vessel and cargo were brought to Key West, where a large portion of the cotton on board was condemned for salvage. The vessel then proceeded to New York, where, on her arrival, she was immediately libelled by the owners of the cotton for its non-delivery in consequence of the barratry of the master and mariners. She was sold to satisfy the decree for damages, and the proceeds were insufficient to cover them.

The instrument referred to purports to be a transfer or sale of the vessel, but the constituent elements of a contract, and not what the parties call it, must be considered in order to determine its character.

An examination of that instrument shows that it was neither a sale, nor a *contract of giving in payment*, but an innominate contract imposing certain limitations upon the ownership of Hawes & Bowen, and conferring certain rights as to the vessel upon the assignee in behalf of their creditors. It has the features of the contract of pledge and of the contract of mandate. It was not a sale which divested Hawes & Bowen of their ownership. Therefore, as the creditors were not the owners of the vessel, as they undoubtedly had an insurable interest in her, and as the policy was knowingly issued for their benefit, it follows that they can recover from the defendant through the plaintiff who is their representative, the loss resulting from the barratry of the master.

The plea of the defense that the loss occurred by stranding, and that stranding is not covered by the policy unless produced by stress of weather, or some other unavoidable cause, can not be maintained. It was the barratrous conduct of the master which caused the stranding and the loss; barratry being insured against, and the vessel being a total loss to the creditors, the plaintiff is entitled to recover.

APPEAL from the Fourth District Court, parish of Orleans. *Théard, J. Hays & New*, and *J. A. Rozier*, for plaintiff and appellant. *T. Parsons, John Lathrop* and *Albert Voorhies*, for defendant and appellee.

WYLY, J. In March 1867, Hawes & Bowen in this city transferred to W. S. Pike, as assignee of their creditors, the steamer "Wm. Tabor," of which they were sole owners.

Pike sent the steamer to Galveston for the purpose of taking a cargo to New York.

On the sixteenth of March, he effected an insurance on said steamer at and from Galveston to New York, in the office of the defendant, for $20,000, paying the premium $301 50.

On the seventh of April, the " Tabor " departed from Galveston for New York with a full cargo of cotton.

In a short time thereafter, the master and other employes, colluding with certain wreckers, committed barratry in fraudulently causing said vessel to be stranded on the rocks near Key West, that they might have the benefit of the salvage of the cargo on board.

The salvers subsequently brought the vessel and damaged cargo to Key West, where they were libeled, and by judgment of the court of Admiralty a large portion of the cotton was condemned for salvage, though certain of the salvers were excepted from the benefit of the decree by reason of their collusion with the captain. The " Tabor " then proceeded to New York where, within twenty-four hours after her arrival, she was libeled by the owners of the cotton for the non-delivery of the cargo as stipulated in the bills of lading, by reason of the barratry of the master and mariners. On the thirtieth of April, 1868, the vessel was condemned, and subsequently it was sold to satisfy the decree for damages occasioned by the barratry aforesaid, and the proceeds were insufficient to discharge the amount of damages awarded to said libelants.

The plaintiff then brought this suit against the defendant to recover the amount of the insurance, alleging that the barratry of the master was one of the perils insured against—that the loss of the vessel, in this instance, by the sale of the United States Marshal, was the result of said barratrous conduct, and that the petitioner, in his representative capacity, is entitled to recover from the defendant the full amount of the insurance.

A copy of the transfer or act of agreement between Hawes & Bowen and their creditors in reference to the steamer "Wm. Tabor, " is made part of the petition. The defendant denied generally the allegations of the plaintiff, "with the exception of the facts :

*First*—" That the plaintiff was, at the time of the execution of the policy, the legal owner of said ship Tabor.

*Second*— " The alleged barratry of the master of said vessel.

" The defendant further denied specially, that the alleged loss, if any occurred, did occur from any stress of weather, collision or unavoidable causes. "

The court rejected the demand of the plaintiff, on the theory : that if Pike is the representative of Hawes & Bowen, the owners of the " Tabor," he can not recover, because, in insuring, he was their agent and by the terms of the policy, as to the owners, the barratry of the

master was not insured against—that if the converse doctrine be true, that is to say, if the assignment conveyed title to the creditors, in effecting insurance for whom it may concern, W. S. Pike was acting for the creditors, the owners, and therefore under the policy, he can not recover.

In the contract of insurance we find the following clause : " Touching the adventures and perils which the insurers are content to bear and take upon themselves in this voyage, they are the seas, jettisms, fire, enemies, men-of-war, pirates overpowering, but no other thieves, restraints and detainments of all kings, princes or peoples of what nation or quality soever, *barratry* ( except embezzlement or theft) *of the master,* unless the insured be an owner of the vessel. "       *       *       *

The first question then is, in whose behalf was the insurance effected ? Did Pike, in insuring "on account of whom it may concern" represent the owners of the vessel, or the creditors of the owners ?

This is the main point involved in the controversy. Assuming the correctness of the alternate proposition of the learned judge *a quo,* his conclusion is undoubtedly correct. But considering the stipulations of the transfer, or article of agreement, made part of the petition, can we say that the ownership of the vessel passed to the creditors of Hawes & Bowen ? If it did not, and the insurance was made in their behalf, they can certainly hold the insurers liable, under the contract, for the loss resulting from the barratry of the master. It is important, therefore, to determine the character of the contract between Hawes & Bowen and their creditors in regard to the steamer " Wm. Tabor."

The instrument purports to be a transfer or sale of the vessel ; but, the constituent elements of a contract, and not what the parties chose to call it, must be considered in order to determine its character.

The act was passed before a notary. It declares in substance that, being desirous of making such a disposition of their property as would be best for the interest of all their creditors and to avoid expenses and delays of litigation, Hawes & Bowen do sell and transfer unto Wm. S. Pike, all their right, title and interest in and to the " Tabor " and two other vessels. "It is hereby understood and agreed by all parties hereto that Pike, the said assignee, is to have power to sell and convey the interest of said Hawes & Bowen in said steamships, in such manner and on such terms as he may deem proper, exercising his own discretion and acting as he may think best for the creditors." * * * " It is further understood and agreed that said assignee merely undertakes to act as agent of the creditors and is to be held responsible for no loss to them except that rsulting from bad faith and gross negligence in the discharge of his duties." He is empowered to make such advances for and on account of said vessels as he may deem best to enhance their value

and promote their sales, and secure the payment of the claims of all the creditors, and for such advances he is to be allowed eight per cent per annum interest. He is further authorized to pay certain outstanding privilege claims against said vessels and is to become subrogated thereto.

"It is further understood and agreed that the creditors hereto signing their names do not release said Hawes & Bowen beyond the amount received from said assignee in payment of their claims." Wm. S. Pike accepts the agreement with the limitation as to his responsibility, and he agrees to sell the vessels or make such disposition thereof "as the interest of said creditors may require according to his judgment, and to pay over the proceeds of the same in full if the sums realized be sufficient, or *pro rata*, if not, to the several creditors. It is hereby understood and agreed that said assignee shall be allowed the commissions fixed by law for the compensation of syndics of insolvents." The various creditors who sign the contract declare, that they approve of the conditions and transfer to W. S. Pike of the vessels, for the purposes specified, and "*agree to desist from legal proceedings against said Hawes & Bowen*, and to await the action of said assignee in their interest as aforesaid and hereby approve the stipulation of said assignee respecting his liability in the discharge of his duties."

This instrument is neither a sale nor a contract of *giving in payment*, because, it does not contain an *aggregatio mentium* as to a fixed price. Revised Code articles, 2439, 2655, 2659. It is not a donation *inter vivos*, nor is it an exchange of one thing for another. It is a conventional obligation, but not such as is competent to transfer the ownership of the thing. It is an innominate contract, imposing certain limitations upon the ownership of Hawes & Bowen, and conferring certain rights as to the vessel upon the assignee in behalf of their creditors.

It has the features of a contract of pledge, because the thing is delivered to secure the creditors of the owners, with power to sell and apply the proceeds to the payment of their claims. Besides the essentials of a contract of pledge, the instrument contains a stipulation in reference to an assignee, defining his powers and liabilities and fixing his salary. In this respect, it has the features of the contract of mandate.

By the express terms of the agreement the creditors do not release Hawes & Bowen from any part of their liabilities; but they "agree to *desist from legal proceedings against them* and to await the action of the assignee," who undertakes to sell the vessel or make such disposition thereof "as the interest of said creditors may require according to his judgment, and to pay over the proceeds in full if the sums realized be sufficient, or *pro rata* if not, to the creditors." Under the contract the

title remained in Hawes & Bowen who, on paying their creditors, could have demanded the restitution of the vessel, at any time before the consummation of the contemplated sale by the assignee. As the creditors were not the owners of the vessel, and as it is proved that the policy was knowingly issued for their benefit, they can recover from the defendant the loss resulting from the barratry of the master.

As pledgees, the creditors undoubtedly had an insurable interest.

The defendant contends however, that the plaintiffs ought not to recover for the loss resulting from the barratrous stranding of the vessel, because, that clause of the policy insuring against the barratry of the master, is modified or limited by a subsequent clause, declaring that the insurer shall not be liable for any expense arising from the stranding or the grounding of the vessel, unless such stranding be caused from "stress of weather, collisions, or other unavoidable causes." It is true the policy contains the stipulation that: "This company shall not be liable for any loss or damage arising from, occasioned by, or occurring in consequence of, the bursting of any of the boilers, or collapsing of any of the flues, or the breaking of any of the machinery of said steamer, nor shall the said company be liable for any expenses arising from stranding or grounding of said steamer, unless such stranding or grounding be caused from stress of weather, or from collisions, or other unavoidable causes."

As the instrument should be construed so as to give effect if possible to every part of it, we do not see in the clause just quoted, any limitation on the one insuring against loss from the barratrous conduct of the master.

The stipulation that the company would not take the risk resulting from accidents to the machinery, nor consent to be held liable for losses resulting from stranding or grounding the vessel, unless the same occurred from "stress of weather, collisions or other unavoidable causes," does not in our opinion, have any reference to the clause insuring against the barratrous conduct of the master. The barratry of the master, without reference to the manner of committing it, is mentioned as one of the perils insured against, and there is nothing in the clause relied on, that can fairly be construed to except the peril of barratry, where the master choses to commit it in a particular way, that is to say, by stranding the vessel.

There is no force in the objection that the plaintiff can not deny that he is the owner of the vessel, because of the averments of the petition and the admission in the statement of the facts. The contract between Hawes & Bowen and the plaintiff is annexed to and made part of the petition, and in the statement of facts it is "admitted that the title to the ship is as per document annexed to and made part of the petition."

The defendant, however, contends that the loss was not the proximate, but the remote result of the barratry and, therefore, the plaintiff can not recover.

The rule is that : "All the consequences naturally flowing from the peril insured against, or incident thereto, are properly attributable to the peril itself." 1 Story Rep. 164.

The barratrous conduct of the master caused the stranding of the vessel and the damage to the cargo, and the natural consequences thereof were, the claim for salvage, the libel of the vessel and its sale by the marshal, resulting in a total loss to the assured. The condemnation and forfeiture of the vessel was the legal consequence of the barratrous conduct of the master, because, if there had been no barratry, there would have been no foundation for the action, or for the libel of the vessel.

That the cargo was not insured is of no consequence.

The right of the consignees or the owners to libel the vessel for the damage and non-delivery of the cargo was, in this case, a direct consequence of the barratrous stranding of the vessel. 14 Pet. 99.

The failure to comply with the terms of the bills of lading, occasioned by the barratry, subjected the vessel to seizure and condemnation, and resulted in a total loss to the assured.

It is therefore ordered, that the judgment appealed from be set aside and annulled and it is now ordered, that the plaintiff, as assignee for the creditors of Hawes & Bowen, recover judgment against the defendant for the sum of twenty thousand dollars, with legal interest from judicial demand and costs of both courts.

---

### On Rehearing.

Morgan, J. There can be no sale without a price. In the deed from Hawes & Bowen no price is stipulated. The debt, nor any part thereof, due from Hawes & Bowen to Pike, or to their other creditors was not discharged by the transfer. In fact, the Tabor was only placed in Pike's hands that it might be used for the benefit of Pike and his co-creditors. The legal ownership remained in Hawes & Bowen. The creditors joined in this act. This was necessary in order that the vessel should be sent forward on a voyage. They were willing to trust her under Pike's control. They probably would not have allowed her to leave port subject to the control of Hawes & Bowen. They would not have released the seizure then upon her and leave her under Hawes & Bowen's control.

Hawes & Bowen were not to be released from their indebtedness except in so far as the vessels transferred might go towards discharging the same. Pike was to sell the vessel or make such disposition of her

as the interests of the creditors might require, and to pay over the proceeds to the creditors.

Pike was therefore, the trustee of Hawes & Bowen. He was at the same time the agent of the creditors, and had the right, as it was his duty, to act in their interest.

The Tabor was sent on a voyage from Galveston to New York: Pike effected an insurance on her, for account of whom it may concern. The insurance was effected through Alexander Brother, and was made, as he informed the insurance company, in the interest of the creditors of Hawes & Bowen, and the insurance was accepted for them. It was therefore the creditors of Hawes & Bowen, *and not the owners of the Tabor*, who were insured. That the creditors, stating their interest, could insure with the consent of the insurer, can not be questioned. Hawes & Bowen, the owners were not insured. The amount insured does not cover the sums due to the creditors. Barratry of the master was insured against, unless the insured be an owner of the vessel. Plaintiffs not being the owners of the vessel, if the loss occurred from the barratry of the master, they are covered by the policy.

It is set up by the defense that, as the loss occurred by stranding, and as it is expressly stipulated that the company shall not be liable for any expenses arising from stranding or grounding, unless such stranding or grounding be caused from stress of weather, or from collisions or other unavoidable causes, and as the stranding was not the result of any of these causes, the loss is not covered by the policy.

The vessel was stranded in consequence of a leak; the leak was occasioned by the act of the master. It was the barratrous conduct of the master which caused the leak. The stranding was an incident to this barratrous conduct. It was therefore the barratrous conduct which caused the loss, and barratry being insured against, the company is liable.

The cargo of the ship was badly injured as the result of the barratrous acts of the captain. A large portion of it had to be sold. When the ship reached New York she was libeled and condemned to be sold to pay the damages, and she was sold. Practically, therefore, as to the creditors, she was a total loss. This loss can be traced directly to the acts of the captain, in a matter covered by the policy, and therefore, entitles the plaintiff to recover.

Good faith lies at the bottom of all contracts. It was the creditors of Hawes & Bowen whom the insurance company contracted to protect, and good faith requires that they should be held to their contract. It is their interest which is now protected.

For these reasons, in addition to those already given, it is now ordered that, our former judgment remain undisturbed.